**FOUNDERS COMMERCIAL, LTD. D/B/A Westchase Gables, Appellant,**

v.

**TRINITY UNIVERSAL INSURANCE COMPANY, Appellee.**

No. 01–03–01063–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 24, 2004.

B. Edward Williamson, Jackson Walker L.L.P., Reginald E. McKamie, Sr., Houston, TX, for Appellant.

Jack McKinley, Ramey, Chandler, McKinney & Zito, P.C., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

In this insurance-coverage dispute, Founders Commercial, Ltd. d/b/a Westchase Gables ("Founders") appeals the trial court's summary judgment declaring that Trinity Universal Insurance Company ("Trinity") has no duty to defend or indemnify Founders in a lawsuit brought in federal court.

We affirm.

### Factual and Procedural Background

Founders owns eight acres of real property at the intersection of Westminster Plaza Drive and Richmond Avenue. At the time Founders purchased it, the property contained no structures. In October 1997, Trinity issued a commercial general liability ("CGL") policy, providing coverage for the entire eight acres.

Founders later constructed an assisted living care center on the portion of the eight acres closest to the intersection of Westminster Plaza Drive and Richmond Avenue. It appears undisputed that approximately half the property remained without buildings after the construction of the assisted living care center.

Trinity renewed the insurance contract for policy years October 1999 to October 2002 by issuing three, consecutive renewal policies ("the policies"). Each of the renewal policies contained a designated premises endorsement. The endorsement provides that coverage is restricted to certain premises, which, in this case, are defined in the policy declarations.

Founders began using the trade name "Westchase Gables" in advertising and promotions around April 2000. In December 2001, Founders began conducting business at the assisted living care center using the name Westchase Gables. In

February 2002, Gables Residential Trust ("GRT") filed suit against Founders in federal court for trademark infringement and dilution of trade name. GRT asserts that it owns exclusive rights to the service mark "Gables" and alleges that Founders infringed on these rights by using the name "Westchase Gables" in conjunction with its apartment management services.

After the federal suit was filed, Founders requested Trinity to provide it with a defense under the policies. Trinity filed a declaratory judgment action in state court, contending that it had no duty to defend or indemnify Founders based on the designated premises endorsement in the policies.

In turn, Founders filed a counterclaim, seeking a declaratory judgment that Trinity owed it a duty to defend, and, in the event that Founders was obligated to pay damages in the federal suit, to indemnify. Founders pointed out that the policies provide coverage for claims against Founders based on an "advertising injury." Founders asserts that, as defined in the policies, GRT's claims constitute an "advertising injury" for which Trinity owes it coverage, and, thus, a duty to defend and to indemnify.

Founders also filed a motion for partial summary judgment, contending that Trinity owed it a duty to defend and indemnify as a matter of law. Trinity responded to Founders's motion and filed its own motion for summary judgment. After considering both motions for summary judgment, the trial court granted Trinity's motion and denied Founders's. Although Trinity offered summary judgment evidence extrinsic to the insurance policies, including an affidavit and deposition testimony, the trial court's order indicates that the court considered only the policies' language in rendering summary judgment in Trinity's favor. Specifically, the order provides that the trial court found "no ambiguity in the terms and no genuine issue of material fact regarding insurance coverage, and no duty of [Trinity] to defend or indemnify Founders against the allegations" made by [GRT] in the federal suit. The trial court ordered that Trinity "does not owe a duty to defend or indemnify [Founders] against the allegations made by [GRT] in the underlying suit ... and for the same reason does not have a duty to indemnify [Founders] against a judgment based upon such allegations."

Founders brings this appeal to challenge the trial court's ruling on the respective motions for summary judgment. Founders frames its sole issue as follows: "Trial court error arises because a reasonable test under the "eight corners" rule reveals insurance coverage for "Advertising injury" allegations shown within the complaint filed in an underlying tort lawsuit, and that [Trinity] owed [Founders] a defense under contested provisions of the insurance policy."

## Standard of Review

The well-settled principles governing the review of summary judgments apply in insurance coverage cases. *Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 327 (Tex. App.-Houston [1st Dist.] 1999, pet. denied). That is, a summary-judgment movant must establish its right to summary judgment on the issues presented to the trial court by conclusively proving all elements of the movant's claim or defense as a matter of law. TEX.R. CIV. P. 166a(c); *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000). If both sides move for summary judgment and the trial court grants one motion and denies the other, then we review both sides' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000) (cit-

ing *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997) and *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988)).

### Principles Governing Duty to Defend

It is well established that a liability insurer's duty to defend is determined by the factual allegations of the pleadings, considered in light of the policy provisions and without reference to the truth or falsity of the allegations. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 24 ·(Tex. 1965). This test, generally known as the "eight-corners rule," limits review to the four corners of the insurance policy and the four corners of the plaintiff's petition in the underlying suit. *Merchants Fast Motor Lines,* 939 S.W.2d at 141; *see St. Paul Surplus Lines Ins. Co. v. Geo Pipe Co.,* 25 S.W.3d 900, 903 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

■■■ If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *King v. Dallas Fire,* 85 S.W.3d 185, 187 (Tex.2002) If a petition alleges facts that, if taken as true, potentially state a cause of action within the terms of the policy, the insurer has a duty to defend. *Merchants Fast Motor Lines,* 939 S.W.2d at 141. When applying the eight corners rule, we give the allegations in the petition a liberal interpretation, focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged, and resolve all doubts concerning the duty to defend in favor of the insured. *Id.* "It is not the cause of action alleged that determines coverage, but the facts giving rise to the alleged actionable conduct." *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 676 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

### The Relevant Policy Provisions

The Trinity policies covering the period of October 1999 through October 2003 contain virtually identical language, including the designated premises endorsement, which restricts coverage to injuries arising out of ownership, maintenance or use of certain, designated premises. The endorsement is reproduced, in relevant part, as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Premises:**

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; ...

No premises is listed in "the Schedule" contained in the endorsement. Thus, by the endorsement's terms, the information contained in the policies' declarations will determine the premises designated for coverage.

The first page of the policies is the Commercial General Liability Policy Declaration ("declaration page"), which lists Founders as a named insured. Immediately following that form are the Commercial General Liability Classification Schedule ("liability classification schedule") and the Policy Schedule Of Names and Addresses ("names and addresses schedule"). The names and addresses schedule identifies "Westminster Plaza Dr. at Richmond Ave, Houston, Harris Co., TX 77082" under the heading of "LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY." The liability classification schedule identifies "4 acres" of "vacant land" as the basis for the policies' insurance premiums.

### The Parties' Contentions

Trinity contends that Founders' coverage under the policies is limited by the designated premises endorsement. Trinity asserts that the policies did not cover GRT's claims because the alleged injuries did not arise from the premises designated for coverage.

Trinity contends that the designated premises in this case is determined by reading the liability classification schedule together with the names and addresses schedule. According to Trinity, both schedules are part of the policy declarations. Trinity points out that, while the names and addresses schedule identifies Westminister Plaza Drive at Richmond Avenue as the premises owned, rented, or occupied by Founders, the liability classification schedule identifies "4 acres" of "vacant land" as the basis for the insurance premium. Trinity explains that reading the schedules together reveals that the only premises designated for coverage is four acres of vacant land located at Westminster Plaza Drive and Richmond Avenue. Trinity asserts that, because GRT's alleged injuries do not arise from the four acres of vacant land covered by the policies, Trinity owes Founders no duty to defend or indemnify it in the underlying federal suit.

On appeal, Founders contends that, applying the eight-corners rule, Trinity owes it coverage under the policies because GRT's claims constitute an "advertising injury," as defined in the policies.[1] Founders also criticizes Trinity's interpretation of the designated premises endorsement. Founders asserts that the reference in the liability classification schedule to "four acres" of "vacant land" "simply provides a basis for Trinity to calculate premiums chargeable to Founders" and nothing more. Founders contends that the schedule does not serve to identify the premises for purposes of the designated premises endorsement.[2] Founders asserts that, be-

---

1. Trinity does not contest that GRT's claims constitute an "advertising injury" as defined in the policies with regard to its duty to defend. Rather, Trinity contends that the policies restrict coverage to those claims for advertising injuries that arise from the premises identified via the designated property endorsement.

2. In its motion for partial summary judgment, Founders acknowledged that the premises designated for coverage under the endorsement is determined by the policy declarations. Founders contended that the names and addresses schedule, as part of the declarations,

establishes the premises to which coverage applies. Because that schedule identifies "Westminster Plaza Drive at Richmond Avenue," without any other limitation, Founders asserted that the entire eight acres owned by Founders at that location, which would necessarily include the assisted living care center, was the designated premises referenced in the endorsement. Founders does not make this particular contention in its appellate brief. Although it contends that the liability classification schedule serves only to calculate premiums, Founders does not expressly aver that the schedule is not part of the policy declarations.

cause its policy interpretation is "reasonable," the contested policy provisions are ambiguous and must be construed in favor of coverage.[3]

### Ambiguity of Designated Property Endorsement and Attendant Provisions

■ Whether the policies' language is ambiguous with respect to identifying the premises for purposes of limiting coverage under the designated premises endorsement is crucial to determining coverage. Courts employ the doctrine of *contra proferentem*, or construing a contract term against the insurer in favor of coverage, only when construing an ambiguous policy provision. *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 676–77 (Tex.App.-Austin 2003, no. pet.); *see also State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995) (explaining that only if insurance policy remains ambiguous after courts apply canons of interpretation should policy's language be construed against insurer in manner that favors coverage.).

■ An ambiguity does not arise with respect to a policy merely because the parties advance conflicting interpretations. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997). Whether a policy provision is ambiguous is a question of law for the court to decide. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). In making this determination, we interpret insurance policies according to the rules of contract construction. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

■ If a contract can be given only one reasonable meaning, it is not ambiguous and will be enforced as written. *Kelley–Coppedge*, 980 S.W.2d at 464. On the other hand, if a contract is susceptible to two or more reasonable interpretations, it is ambiguous. *Id.* When an alleged contract ambiguity involves an exclusionary provision of an insurance policy, then we " 'must adopt the construction urged by the insured if that construction is reasonable, even if the construction ... urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.' " *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991)).

■ If there is a single guiding principle that governs our interpretation of the insurance policy, it is to give effect to the parties' intent as expressed in the policy's plain language. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). While parol evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists. *Balandran*, 972 S.W.2d at 741. To give effect to the parties' intent as expressed in the policy's plain language, we must read all parts

---

**3.** Founders also contends that it was error for the trial court to consider the extrinsic evidence offered by Trinity in determining whether the policies require Trinity to defend Founders against GRT's claims. As stated, the language of the trial court's order indicates that it did not consider the extrinsic evidence in ruling on the parties motions for summary judgment. Thus, we need not determine whether it would have been permissible for the trial court to consider the extrinsic evidence in determining Trinity's duty to defend in this case. *See Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 863 n. 1 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (explaining that exception to eight-corners rule allowing for consideration of extrinsic evidence applies "in very limited circumstances").

of a contract together. *Beaston*, 907 S.W.2d at 433 (citing *Forbau*, 876 S.W.2d at 133). In other words, we give effect to the expressed intent of the parties in the policy as a whole, rather than interpret one provision in isolation. *Id.* "Courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *Id.*

Applying these rules, we conclude that the contested policy provisions in this case are not ambiguous. There is only one reasonable interpretation offered by the parties: the policy interpretation offered by Trinity that coverage is limited to injuries arising out of "four acres" of "vacant land" at Westminster Plaza Drive and Richmond Avenue. In contrast, Founders policy interpretation—that the liability classification schedule serves only to allow the calculation of premiums—does not comport with the rules of contract construction. In particular, Founders's reading violates the construction principles that policy provisions cannot be read in isolation and should be interpreted to effectuate the parties' intentions.

Reading the plain language of the policy provisions in the context of the policies as a whole, reveals the following. Under the heading, "FORMS APPLICABLE TO THIS COVERAGE PART," the declaration page of the policies expressly incorporates the designated premises endorsement into the policy, thus placing Founders on notice that coverage was limited to certain premises. The designated premises endorsement expressly warns the insured that it "modifies insurance provided" under the "commercial general liability coverage part" and that "This Endorsement Changes the Policy. Please Read it Carefully." Such plain language indicates a change in the premises covered from the original CGL policy.

The designated premises endorsement makes clear that, if no premises is designated in the endorsement, then the premises to which coverage is limited will be identified in the policy declarations. Although the declaration page does not list any premises, it does provide that both the names and addresses schedule and the liability classification schedule are "applicable to this coverage part." Another form, entitled "Commercial General Liability Policy Contents," identifies both schedules as being part of the policy.

■ Applying the appropriate rules of contract construction, neither schedule can be read in isolation. We agree with Trinity that the names and addresses schedule and the liability classification schedule, which are found consecutively in the policies, must be read together, in context. Each schedule conveys distinct and pertinent information about the insured premises. The location of the premises is identified in the names and addresses schedule while the nature and extent of the premises is revealed in the liability classification schedule. As Trinity wrote in its motion for summary judgment, "[o]nly by reading the 2 schedules together does the insured have a complete description of the 'premises' to which the [designated premises endorsement] refers."

Moreover, as recognized above, the liability classification schedule is part of the policies and has meaning beyond simply providing a basis for the premiums charged. Although discounted by Founders, the basis for the premiums charged is indicative of the parties' intent regarding what premises they agreed to be covered.

We hold that the policy, viewed in its entirety, unambiguously provides that coverage under the policy is limited to injuries arising out of "four acres" of "vacant land"

at the corner of Westminster Plaza Drive and Richmond Avenue. Thus, unless the claims asserted by GRT arose out of "four acres" of "vacant land" at that intersection, Trinity has no duty to defend Founders in the underlying federal action.

### Application of the Eight–Corners Rule

In its complaint, the factual basis given by GRT for its alleged injuries is that Founders "marketed and sold, and continues to market and sell, apartment management services utilizing" GRT's service mark. The complaint does not mention the covered premises nor does it allege any tortious conduct attributable to the four acres of vacant land covered under the policies. Thus, applying the eight-corners rule, we hold that Trinity does not have a duty to defend Founders in the federal action because GRT's alleged injuries do not arise from the covered premises.

### Duty to Indemnify

 Founders also contends that the trial court erred in determining that Trinity owed no duty of indemnification. The duty to indemnify is a distinct and separate duty from the duty to defend. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821–22 (Tex.1997). The Texas Supreme Court has held that the duty to indemnify is justiciable before trial of the underlying suit when the same reasons that negate the duty to defend may, likewise, negate any possibility that the insurer will have a duty to indemnify for any judgment. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997). If the facts alleged in the underlying suit are insufficient to invoke the duty to defend, then proof of all of those same facts will not invoke the insurer's duty to indemnify. *Id.* For the same reasons why there is no duty to defend, we hold that

Trinity has no duty to indemnify Founder for any judgment obtained against it by GRT in the federal action. *See id.*

### Conclusion

In summary, we hold that, under the facts pleaded in GRT's underlying complaint and in light of the pertinent policy provisions, Trinity has no duty to defend or indemnify Founder's as a matter of law. The injuries alleged by GRT do not arise from conduct or activities on the premises covered by the policies, *i.e.,* four acres of vacant land at Westminister Plaza Drive and Richmond Avenue. The trial court properly granted Trinity's motion for summary judgment and properly denied that of Founders.

We overrule Founder's sole issue and affirm the trial court's summary judgment.