**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company, Plaintiff,**

**v.**

**The BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, Intervenor,**

**v.**

**Longview Creosoting Company, et al, Defendants.**

No. 6:01–CV–536.

United States District Court, E.D. Texas, Tyler Division.

July 16, 2003.

Brad Eugene Brewer, Zelle Hofmann Voelbel Mason & Gette, Dallas, TX, David Elias Cowen, McLeod Alexander Powel & Apffel, Galveston, TX, Edwin Lawrence Merriman, Merriman Patterson Connolly & Hughes, Longview, TX, for Plaintiff.

J. Don Westbrook, Coghlan Crowson Fitzpatrick Westbrook & Westhington, Longview, TX, for Defendants.

### MEMORANDUM AND ORDER

HANNAH, District Judge.

Before the Court is Plaintiff Employers Insurance of Wausau a Mutual Company's Motion for Partial Summary Judgment (Doc. # 29), Defendants' Motion for Summary Judgment and Response (Doc. # 30). Plaintiff's Response and Intervenor's Reply. Based on the party's filings and the applicable law. Plaintiff Employers Insurance of Wausau a Mutual Company's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment and Response are both hereby GRANTED in part and DENIED in part.

### I. FACTS[1] AND PROCEDURAL HISTORY

In 1999, the Burlington Northern & Santa Fe Railway Company ("BNSF") spent almost $5 million in cleanup costs to decontaminate its property in Longview, Texas. Longview Creosoting Company and the McDaniels (collectively "Longview") previously leased the property from BNSF for use as a tie treating plant. In another action currently pending before this Court,[2] BNSF brings suit against Longview (the "Underlying Lawsuit") asserting contribution claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), the Texas Solid Waste Disposal Act, and seeking damages for chemical trespass, breach of contract, negligence, gross negligence, and negligence per se. BNSF, the plaintiff in the Underlying Suit, alleges that Longview released pollutants onto the property leased from and owned by BNSF.

Longview, insured by Employers Insurance of Wausau, a Mutual Company ("Wausau"), demands that Wausau defend them in the Underlying Lawsuit. Wausau then filed this complaint for declaratory judgment asking this Court to determine that Wausau has no duty to defend or indemnify Longview in the Underlying Lawsuit under the terms of the Wausau insurance policies. BNSF, claiming to be an interested party in the outcome of the declaratory judgment action, was allowed to intervene. Wausau and Longview now assert motions for summary judgment.

### II. LEGAL STANDARDS

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). A fact is "material" if it might

---

1. The Court does not, by virtue of this recitation, adjudicate factual matters that remain in dispute.

2. *The Burlington Northern & Santa Fe Railway Company v. Longview Creosoting Company, et al.*, No. 6:99–CV–598 (E.D. Tex. filed Oct. 18, 1999).

affect the outcome of the suit under the governing law. *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Merritt–Campbell, Inc.,* 164 F.3d at 961. When ruling on a motion for summary judgment, the Court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party seeking summary judgment bears the initial burden of demonstrating the lack of a genuine issue of material fact. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the moving party "fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* If the movant meets its burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *EEOC v. Texas Instruments Inc.,* 100 F.3d 1173, 1180 (5th Cir.1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita,* 475 U.S. at 585, 106 S.Ct. 1348; *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996).

## III. ANALYSIS

In its Partial Motion for Summary Judgment, Plaintiff Wausau seeks two rulings. First, Wausau requests a declaration that each policy has a $25,000.00 aggregate limit for property damage claims. Second, Wausau seeks a declaration that Defendants Longview cannot stack, or add together, the limits of liability of the various insurance policies. Longview responds with its own Motion for Summary Judgment and asserts three arguments. Longview first claims Wausau's Motion is not ripe until the Underlying Lawsuit has been adjudicated. Next, Longview avers that Wausau's pre–1967 policies have no aggregate limits for property damage, and that some of the property damage was caused by factors other than "wood preserving." Finally, Longview argues that these insurance policies may be stacked. The Court addresses each argument in turn.

### A. Ripeness

■ Longview asserts that the Court should either deny Wausau's Motion or defer ruling until the Underlying Lawsuit concludes. Since Longview has yet to be found liable in the Underlying Lawsuit, Longview argues that an examination of Wausau's insurance policies is premature and constitutes an advisory opinion. Longview characterizes this declaratory judgment action as a determination of Wausau's duty to indemnify, and states that an insurer's duty to indemnify is not justiciable until the underlying suit reaches its end. Wausau, however, defines the issue as one of construing the terms of the policy and claims it does not seek a ruling that there is no duty to indemnify.

■ "A district court has broad, but not unfettered, discretion to retain or dismiss a declaratory judgment suit." *American States Ins. Co. v. Bailey,* 133 F.3d 363, 368 (5th Cir.1998). It is fundamental, however, that a federal court may not issue a declaratory judgment unless an "actual controversy" exists. *Middle South Ener-*

*gy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986). Most Texas courts are at odds with Longview's contention that determinations of an insurer's duty to indemnify does not constitute an "actual controversy" until the underlying suit concludes.[3] While a smattering of Texas cases seems to support Longview's position, a closer look proves enlightening. Although the First District Court of Appeals wrote that a trial court has no jurisdiction to declare an insurer's liability to indemnify its insured for damages that may be assessed in a pending lawsuit, it noted that a "determination of an insurer's *duty to pay* would be hypothetical before judgment is granted against the insured, and the court's opinion would be purely advisory." *J.E.M. v. Fid. & Cas. Co. of New York,* 928 S.W.2d 668, 671–72 (Tex.App.—Houston [1st Dist.] 1996, no writ) (emphasis added). Wausau's declaratory judgment action does not seek a determination of its duty to pay. As explained in a similar case, the declaratory judgment "does not state that [the insurer] *will have* to pay ... the limits of the policy, it simply defines those limits." *Foust v. Ranger Ins. Co.,* 975 S.W.2d 329, 332 (Tex.App.—San Antonio 1998, writ denied). The Court, therefore, must define the limits of the Wausau policies. It need not address Wausau's duty to indemnify.

The Court finds *Foust* instructive. There, while the underlying suit pended, the insurer filed a declaratory judgment asking the court to determine whether the damage at issue was caused by a single occurrence or multiple occurrences as defined by the policy. *Id.* at 331. The San Antonio court found the issue justiciable and issued a declaratory judgment prior to the completion of the underlying case. *Id.* at 332. Admittedly, *Foust* concerns an

insurer's duty to defend, but it should not be so narrowly read. The court makes clear that an interpretation of the terms of a policy is often separate and apart from the issue of an insurer's duty to indemnify. Such is the case here. This is not an indemnity issue. That is, the Court is not asked to determine whether Wausau will have to pay on its policy. Wausau seeks an interpretation of policy terms regarding aggregate limits and the law concerning stacking. The Court, therefore, finds this declaratory judgment judicable. The Court now turns to the substance of the Motions.

## B. Aggregate Limits

Wausau seeks a declaration that each policy has a $25,000.00 aggregate limit for property damage claims. Longview, however, claims these aggregate limits do not apply. According to Longview, the pre–1967 policies assign limits to various kinds of property damage, but these specific damages are not included. Longview concedes that the post–1967 policies contain applicable aggregate limits. Defendant's Motion for Summary Judgment and Response at 4, *Wausau* (No. 6:01–CV–536). Analysis will be confined, therefore, to the six pre–1967 Wausau insurance policies at issue.

First, the Court addresses whether the pre–1967 policies have a $25,000.00 aggregate limit for property damage claims. Several rules of construction steer the Court's analysis. Insurance contracts are examined with the same rules of construction as other contracts. *Nat. Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex.1995). The Court's primary goal is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins.*

---

**3.** *Bailey,* 133 F.3d at 368–69; *Farmers Texas County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex.1997); *Stewart Title Guar., Co. v.*

*Hadnot,* 101 S.W.3d 642, 647 (Tex.App.—Houston [1st Dist.] 2003, writ requested).

*Co. of America,* 972 S.W.2d 738, 741 (Tex. 1998). All parts of the contract must be read together, giving meaning to every clause, sentence, and word so nothing is rendered inoperative. *Id.*

Longview admits the pre–1967 policies contain aggregate limits, but argues the policies do not limit coverage for the injuries found here. Defendant's Motion for Summary Judgment and Response at 4, *Wausau* (No. 6:01–CV–536). Indeed, the pre–1967 policies insure against three types of risks that can give rise to property damage. The three categories of risks are defined in the policies as: (1) "operations"; (2) "protective"; and (3) "contractual." The "Limits of Liability" section for each policy sets out the aggregate limits of liability for these three types of property damage claims. In similar language, the three types of claims are assigned an aggregate limit, which is "the total limit of the company's liability for *all damages* arising out of an injury to or destruction of property, including the loss of use thereof . . . ." Wausau General Liability Policy at Condition 6 (Plaintiff Exhibit A) (emphasis added). This section speaks in terms of "each accident." Each accident has a $10,000.00 limit. Coverage for each accident is further capped by the aggregate limit on the declaration page of the policy, which is $25,000.00. The Parties' intent shines through. Reading all parts of the policies together and leaving no word or phrase meaningless, the three varieties of claims clearly have aggregate limits of $25,000.00 per policy period. Accordingly,

drawing all inferences in a light most favorable to Longview, the Court finds that each policy has a $25,000.00 aggregate limit for these kinds of property damage claims. The Court now addresses whether Longview's claims fall under the three categories of coverage listed in the policies and are, therefore, subject to aggregate limits.

 Longview argues that the pre–1967 policies contemplate coverage for risks that lie outside the three types of claims listed above and, therefore, do not contain aggregate limits. As evidence of this, Longview points to Condition 1 in the policies. Condition 1 discusses premiums, and states that "rates for hazards described in the declarations are stated therein. Premium bases and rates for hazards not so described are those applicable in accordance with the manuals in use by the company." Wausau General Liability Policy at Condition 1 (Plaintiff Exhibit A). Longview asserts that instead of limiting coverage, Condition 1 actually broadens it. Because Condition 1 discusses premium "bases and rates for hazards not so described," Longview claims the policies contemplate a general type of property coverage for risks that are not listed on the declaration page. These unlisted, unknown claims would not have aggregate limits since they fall outside the three kinds of claims that are so limited.[4] Wausau, however, insists that the specific coverage provided is defined in the policies

4. Longview unhelpfully cites the "concurrent causation" doctrine in another argument, Longview claims that "even if property damage is caused *in part* by wood treating and in part by another activity not subject to aggregate limits, then the damage is not subject to aggregate limits." Defendant's Motion for Summary Judgment and Response at 6, *Wausau* (No. 6:01–CV–536). Texas case law teaches quite the opposite. The concurrent

causation doctrine provides that when "covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s)." *Wallis v. United Servs. Auto Ass'n,* 2 S.W.3d 300, 303–303 (Tex.App.—San Antonio 1999, writ denied). Accordingly, any covered peril here will be subject to the policies' aggregate limits.

and notes that no general property coverage clause exists. The Court agrees.

■ Whether a contract is ambiguous is a question of law. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). "Where an insurance policy's provisions are ambiguous or inconsistent, and is subject to two or more reasonable interpretations, then that construction which affords coverage will be the one adopted." *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex.1990). If the provisions are susceptible to only one reasonable interpretation, however, these rules do not apply. *Bailey*, 133 F.3d at 369. Condition 1 is only susceptible to one interpretation and is, therefore, not ambiguous. In discussing premiums, Condition 1 notes that *should* the parties contract for additional coverage, the bases and rates will be those set forth in the Wausau manuals. It is unreasonable to believe that the policies limit coverage for the three types of property damage listed, but provide unlimited coverage for all other unlisted, undefined claims that may arise. Importantly, no general coverage clause exists. It is clear to this Court that the Parties contracted for three specific types of coverage, which are subject to a $25,000.00 aggregate limit. If Longview had wanted general coverage, it would have insisted it be clearly set forth in the policy, and Wausau would certainly have collected a premium for it.

■ Having established that any claim under the Wausau policies is limited by a $25,000.00 aggregate, the Court now examines what kind of activities are covered. Longview asserts that the policies cover "wood preserving," as well as additional activities. No exclusions or limitations exist in the policies, claims Longview, that limit coverage solely to wood preserving. Furthermore, Longview argues that any contamination while the wood treating process occurred or activities related to chemical storage, leaks from pipes, or waste handling might also be covered. Wausau insists that the only operations coverage provided by the policies is for claims arising from wood preserving operations.

While no exclusions specifically limit coverage to wood preserving, the only operations listed in the policy's Description of Hazards schedule is wood preserving. Clearly, the Description of Hazards section defines what risks are covered. As this is the only activity listed, it is reasonable to infer that insurance coverage is provided for this activity alone. If other risks were included in the policy, they would surely be listed here. Moreover, as previously noted, no general coverage clause appears anywhere in the policies. The Court finds that the pre–1967 Wausau policies only cover activities involved in wood preserving. The Court must now determine the meaning of "wood preserving."

■ As Longview correctly notes, "wood preserving" is not defined in the policies. Longview contends that "wood preserving" encompasses not only the actual treating of the wood ties, but also other activities on the property peripherally related to the treating. Such other activities include wood and chemical storage, waste handling and disposal, chemicals unloaded from trucks, leaking pipes, seepage from ponds, and migration to groundwater and other land. Wausau takes the term "wood preserving" on its face and asserts that coverage was only for the act of treating the wooden ties. Although the parties assign differing constructions to the provisions at issue, mere disagreement is not enough to render a contract ambiguous. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). A contract is ambiguous only when, after application of the pertinent rules of construction, there remains genuine uncer-

tainty as to which interpretation is proper. *Asset Restructuring Fund, L.P. v. Liberty Nat'l Bank & Resolution Trust Corp.*, 886 S.W.2d 548, 550 (Tex.App.—Austin 1994, writ denied). It is well settled that there are two kinds of ambiguities. "A patent ambiguity is one evident on the face of the contract." *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996). "A latent ambiguity exists when a contract is unambiguous on its face, but fails by reason of some collateral matter when it is applied to the subject matter with which it deals." *Id.* at 282–83. The definition of "wood preserving" seems obvious enough, but it is unclear whether the policies cover only the processes directly related to the actual treating of the ties, or other peripheral but necessary activities, such as the storage of chemicals, leakage from pipes, and the like. The Court, therefore, finds the term "wood preserving" to be a latent ambiguity.

In interpreting the policies, the Court's primary goal is to give effect to the written expression of the parties' intent, Insurance policies must be strictly construed in favor of the insured to avoid exclusion of coverage. *Acceptance Ins. Co. v. Hood*, 895 F.Supp. 131, 133 (E.D.Tex.1995). Furthermore, because this case involves a limitation on Wausau's liability under the policy, an even more stringent construction is required. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987). As mentioned earlier, "wood preserving" is not defined in the policies. These words, therefore, should be given their plain, ordinary and generally accepted meanings. *Gonzalez*, 795 S.W.2d at 736. The Court turns to the policies at issue to discern the Parties' intent.

■ Clearly, "wood preserving" encompasses activities involved in the actual creosoting and treating of wood ties. This is the narrowest reading of the term and both Parties agree the policies cover such

acts. Interpretations diverge, however, regarding whether the policies insure other activities related to wood preserving. In defining the scope of coverage for property damage liability, Coverage B of the Insuring Agreements states that Wausau will "pay on behalf of the insured *all sums* which the insured shall become legally obligated to pay as damages because of injury or destruction of property, including the loss of use thereof, caused by the accident." Wausau General Liability Policy at Coverage B (Plaintiff Exhibit A) (emphasis added). As discussed earlier, the policies insure against three types of risks that can give rise to property damage: (1) "operations"; (2) "protective"; and (3) "contractual." Limits of property damage for "aggregate operations" is defined as "the total limit of the company's liability for *all damages* arising out of injury to or destruction of property ...." *Id.* at Condition 6 (emphasis added). Wausau defines aggregate limits for protective and contractual coverage in similar language, speaking in terms of liability for "all damages" of the insured. Likewise, the term "operations" as defined in the Exclusion of Products Hazard Endorsement includes "any act or omission *in connection with operations performed* by or on behalf of the named insured on the premises or elsewhere ...." *Id.* at Exclusion of Products Hazard Endorsement (emphasis added). The Court finds nothing in the policies that modifies this broad language or limits the coverage to the actual manufacturing and treating of the wood ties. Had Wausau wanted to so limit the terms of coverage, it certainly could have. Moreover, Wausau could have easily defined the term "wood preserving" to reflect such an intent. Noting that the Court is obligated to strictly construe the policies in favor of Longview to avoid exclusion of coverage, the Court finds that the term "wood preserving," as used in the Wausau policies, includes activities related

to wood preserving but not actually involved in the process of treating the ties, such as wood and chemical storage, waste handling and disposal, chemicals unloaded from trucks, leaking pipes, seepage from ponds, and migration of tie treating chemicals to groundwater and other land.

Wausau was careful to limit coverage to the activities involved in wood preserving, excluding any risks unrelated to treating ties. Wausau, for instance, makes clear that normal activities pertaining to the running of any business, such as maintenance and repair of the premises, or routine structural alterations to buildings and property are not insured. *Id.* at Condition 6. Likewise, the policies specifically exclude coverage for property damage due to faulty plumbing, heating, refrigeration, air conditioning units, sprinkler systems, standpipes for fire hoses, or rain or snow damage due to defective roofs, doors, windows, skylights, transoms, or ventilators. *Id.* at Exclusion (i). In short, these insurance policies cover wood preserving. Other activities related to the running of the business that have nothing to do with treating ties are not covered. In other words, any property damage resulting from heating or cooling the buildings, waste or trash produced from other activities besides treating ties, leaky pipes that are not directly used for wood preserving, motor oil or chemicals from vehicles, grading the land, or any other conceivable result of an event unrelated to wood preserving is not insured by these policies. Put another way, property damage does not fall under the aegis of these policies unless it is a direct result of the wood preserving process, or if it relates to the activities necessary to the process, such as chemical and product storage and the like.

## C. Stacking

■ Wausau seeks a declaration from this Court that Longview cannot stack, or add together the limits of liability of the various insurance policies. Wausau contends that stacking non-overlapping, temporally distinct policies is prohibited here since the anti-stacking rule is dependent upon a finding of a single indivisible injury. Wausau asserts that while any harm to the Longview property may have resulted from several events, the environmental injury is nonetheless single and indivisible. Longview, however, claims that Texas courts look to the number of occurrences to determine whether stacking is permissible. Because the injury to the property occurred over time from a series of separate acts involved in wood preserving, Longview claims these many occurrences make stacking appropriate. Both Parties cite many of the same cases for support.

The pivotal case addressing whether separate policies can be stacked is *American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842 (Tex.1994). *Garcia* involved a coverage dispute over a medical malpractice liability policy. In the underlying lawsuit, it was determined that the doctor's treatment constituted continuing negligence, which occurred throughout several policy periods. *Id.* at 845–46. The Texas Supreme Court held that "consecutive policies, covering distinct policy periods, could not be 'stacked' to multiply coverage for a single claim involving *indivisible injury.*" *Id.* at 853 (emphasis added). The court, however, also spoke in terms of "occurrences." In examining the number of occurrences, the court reached the same conclusion, holding that even if a "claim occurrence" extends over several policy periods, it does not raise the per-occurrence indemnity cap found in each policy. *Id.* at 853–54. "Even the jurisdiction embracing the broadest coverage trigger rule has held that multiple coverage does not permit an insured to 'stack' the limits of multiple policies that do not overlap . . . ." *Id.* at 854. *Garcia* is not quite on all fours with the case at bar. There,

"each claim occurrence" was a term of art unique to medical malpractice risks and defined as an "accident, including continuous or repeated exposure to substantially the same general conditions ...." *Id.* Here, the terms "accident" and "occurrence" are not so broadly defined. Be that as it may, *Garcia* seems to analyze the issue from the standpoint of both indivisible injury and occurrences, reaching the same result.[5] In a similar case relying on *Garcia,* the U.S. District Court for the Southern District of Texas agreed, noting that the "Texas Supreme Court has held that where two insurance policies do not overlap chronologically, the limits of those policies may not be stacked." *Bethany Christian Church v. Preferred Risk Mut. Ins., Co.,* 942 F.Supp. 330, 337 (S.D.Tex. 1996). In looking at the Wausau policies, no provision exists for applying liability limits to injuries covered by multiple policies. Moreover, Longview did not purchase $225,000 of insurance as they could have done with excess or umbrella coverage. They purchased one policy at a time with a liability limit of $25,000. Since the Wausau policies run concurrently and do not overlap chronologically, the Court finds that Longview may not stack policy limits.

## IV. CONCLUSION

Viewing the record as a whole and drawing all inferences in the light most favorable to the non-movant, the Court finds that each policy has a $25,000.00 aggregate limit for property damage claims. The Court further finds that Longview cannot stack the limits of liability of the various insurance policies. Finally, the Court finds that the term "wood preserving," as used in the Wausau policies, covers property damage that results directly from the wood preserving process, or that relates to the activities necessary to the process. Accordingly, for the reasons stated above, Plaintiff Employers Insurance of Wausau a Mutual Company's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment and Response are both hereby GRANTED in part and DENIED in part.

It is SO ORDERED.

5. Notably, Texas courts counsel against stacking even if multiple policies from more than one carrier are in effect. In such a case, "the insured's indemnity limit should be whatever limit applied at the single point in time during the coverage periods of the triggered policies when the insured's limit was highest." *Garcia,* 876 S.W.2d at 855; *CNA Lloyds of Texas v. St. Paul Ins., Co.,* 902 S.W.2d 657, 661 (Tex.App.—Austin 1995, writ dism'd by agr.).