**Opinion issued August 29, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-23-00387-CV**

_____

**FARMERS INSURANCE EXCHANGE, Appellant**

**V.**

**THE CINCINNATI INSURANCE COMPANY, Appellee**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-30914**

---

## MEMORANDUM OPINION

This appeal arises from a dispute between two co-insurers concerning excess liability coverage for a drowning death which occurred at a property managed by the insurers' mutual insured. The drowning death is the subject of a separate pending lawsuit.

Appellee, The Cincinnati Insurance Company ("Cincinnati"), filed a declaratory judgment action against appellant, Farmers Insurance Exchange ("Farmers"), seeking declarations that (1) a Farmers policy provides excess coverage for any liability ultimately determined against the mutual insured for the drowning death; and (2) the Farmers policy shares excess coverage on a pro rata basis with a Cincinnati policy. Farmers asserted a counterclaim for a declaration that its policy does not provide coverage. Farmers filed a plea to the jurisdiction arguing that the trial court lacked subject-matter jurisdiction over Cincinnati's claim but had subject-matter jurisdiction over Farmers' counterclaim. Both parties filed motions for summary judgment and requested attorney's fees and costs. The trial court entered a final judgment denying Farmers' plea to the jurisdiction and motion for summary judgment and granting Cincinnati's motion for summary judgment.

In three issues on appeal, Farmers contends that the trial court erred by granting Cincinnati's motion for summary judgment and denying Farmers' motion for summary judgment and plea to the jurisdiction because: (1) the Farmers policy does not provide liability coverage for the premises where the drowning death occurred; (2) the trial court lacked subject-matter jurisdiction over Cincinnati's claim for declaratory judgment, but the court had subject-matter jurisdiction over Farmers' counterclaim for declaratory judgment; and (3) the trial court erred by awarding attorney's fees and costs to Cincinnati and by denying Farmers' request

for attorney's fees and costs. For the reasons discussed below, we conclude that the trial court lacked subject-matter jurisdiction over both Cincinnati's claim and Farmers' counterclaim. Accordingly, we reverse the trial court's judgment and render judgment dismissing the case for lack of subject-matter jurisdiction.

## Background

The parties agree that on March 23, 2018, an eighteen-year-old male drowned in a retention pond in League City while successfully saving his younger brother from drowning. In 2019, the deceased's parents filed suit against a property manager, Williams ACMI Ventures, LP ("ACMI"), and others alleging various causes of action sounding in tort ("the underlying lawsuit").[1] The plaintiffs seek up to $75,000,000 in economic and non-economic damages and up to $150,000,000 in exemplary damages from ACMI and the other defendants. The existence and extent of ACMI's potential liability is not clear from the appellate record. The underlying lawsuit is pending in a separate proceeding, and neither Cincinnati nor Farmers is a party to that proceeding.

---

[1] The underlying lawsuit is *DeRouen v. Hidden Lakes Development Partners, LP*, Cause No. 2019-26660, pending in the 164th District Court of Harris County, Texas. ACMI and the other parties to the underlying lawsuit are not parties to this appeal.

3

At the time of the drowning, ACMI was insured by at least three insurance policies.[2] Cincinnati provided primary and excess liability coverage to ACMI through two separate policies. The first policy is a commercial general liability policy ("the Cincinnati CGL policy" or "the CGL policy") providing $1 million in coverage. The parties do not dispute that this policy provides primary liability coverage for the drowning death. The second policy issued by Cincinnati is an umbrella liability policy ("the Cincinnati UL policy" or "the UL policy") providing up to $5 million in excess liability coverage. Pursuant to the CGL policy, Cincinnati has provided a defense to ACMI related to the underlying lawsuit since April 2018.

Farmers issued a third policy to ACMI. The parties primarily dispute whether this policy provided co-excess liability coverage on a pro rata basis with the Cincinnati UL policy. Farmers contends that the policy did not cover the premises where the death occurred or provide liability coverage at all. The record indicates that Cincinnati requested that Farmers share in ACMI's defense and "contribute to settlement at [an] upcoming mediation" in the underlying lawsuit, but Farmers denied the request.

Cincinnati filed suit for declaratory relief against Farmers in Harris County in May 2022. In its live petition, Cincinnati conceded that its CGL and UL policies

---

[2]     Farmers' counterpetition alleged that, in addition to these three policies, "ACMI was insured as an additional insured under a primary liability policy" issued by a separate insurer.

provide primary and excess liability coverage, respectively, for any damages against ACMI that may result from a settlement or judgment in the underlying lawsuit. Cincinnati's petition quoted relevant portions of the three policies in dispute.

Cincinnati further alleged that the trial court had jurisdiction under the Uniform Declaratory Judgments Act ("UDJA") because the plaintiffs in the underlying lawsuit "have alleged damages, and made settlement demands, in excess of the primary policy limits," thus creating "an actual controversy justifying judicial intervention" in the parties' coverage dispute. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011. Cincinnati sought two declarations: (1) the Farmers policy provides excess coverage for any liability determined against ACMI in the underlying lawsuit; and (2) the Farmers policy and the Cincinnati UL policy "are co-excess to the Cincinnati CGL Policy and share on a *pro rata* basis" for any liability ultimately determined against ACMI in the underlying lawsuit. Cincinnati also requested its attorney's fees and costs.

Farmers filed an answer and a counterclaim. In its live counterpetition, Farmers admitted several of Cincinnati's pleading allegations, including the basic facts of the underlying lawsuit and various provisions of the Farmers and Cincinnati policies quoted in Cincinnati's petition. Farmers denied, however, that it had a duty to indemnify ACMI for any liability ultimately determined in the underlying lawsuit based on the terms of the Farmers policy. Farmers' counterpetition further alleged

that the trial court lacked jurisdiction over Cincinnati's claim for declaratory relief before judgment was granted against ACMI in the underlying lawsuit because any determination of this claim would constitute an impermissible advisory opinion. Farmers alleged, however, that the trial court did have jurisdiction to declare that Farmers had no duty to indemnify ACMI because "the pleadings in the underlying [lawsuit] admit of no circumstance where coverage would exist." Thus, Farmers asserted a counterclaim for a declaratory judgment that it has no duty to indemnify ACMI for any judgment or settlement ultimately entered in the underlying lawsuit because the pleadings in the underlying lawsuit preclude the existence of coverage. Farmers also requested attorney's fees and costs.

Farmers filed a motion for summary judgment arguing that its policy did not cover the premises where the drowning death occurred. Farmers attached copies of the Cincinnati CGL policy, the Farmers policy, and pleadings filed in the underlying lawsuit. Cincinnati filed a response. The trial court signed an interlocutory order denying the motion.

Cincinnati filed a motion for summary judgment arguing that the Farmers policy provided co-excess liability coverage for the drowning death. Cincinnati also requested an award of attorney's fees and costs. Cincinnati attached copies of its CGL and UL policies, the Farmers policy, pleadings filed in the underlying lawsuit, two letters from Farmers' counsel to Cincinnati's counsel, and two affidavits.

Farmers filed a response disputing Cincinnati's interpretation of the Farmers policy. Farmers combined its response with a motion to reconsider the trial court's order denying its motion for summary judgment.

Farmers also filed a plea to the jurisdiction and a motion to abate or dismiss the suit. Farmers argued that because the underlying lawsuit had not yet reached a final judgment on ACMI's liability, Cincinnati's declaratory action concerning Farmers' duty to indemnify ACMI did not present a ripe, justiciable controversy. Farmers further argued that a provision in its policy prohibited suit against it until an agreed settlement or final judgment had been entered against ACMI. Farmers requested that the court either abate Cincinnati's declaratory action until a judgment or settlement was reached in the underlying lawsuit or dismiss the action altogether. Farmers further argued that while the trial court lacked jurisdiction to declare that Farmers had a duty to indemnify, the court did have jurisdiction to declare that Farmers did not have a duty to indemnify ACMI.

Cincinnati responded to the plea arguing that the trial court had jurisdiction under the UDJA. Cincinnati argued that its claim presented a pure legal question concerning the interpretation of an insurance policy and that there was an immediate and actual justiciable controversy that would resolve the "imminent conflict" between the parties, clear the uncertainty concerning Farmers' rights and duties under its policy, and allow the parties in the underlying lawsuit to proceed to

7

settlement negotiations. In arguing that a justiciable controversy existed between the parties, Cincinnati argued that both it and Farmers had issued policies to ACMI and that they have adverse interests in resolving the competing interpretations of the policies. Cincinnati also argued that the plaintiffs in the underlying lawsuit seek more than $75 million in damages and have served two settlement demands on ACMI: one for $24 million and a second for nearly $6 million, and only Cincinnati has thus far provided any coverage to ACMI.

The trial court entered two interlocutory orders denying Farmers' plea to the jurisdiction and granting Cincinnati's motion for summary judgment, respectively. Farmers filed a combined motion to modify, correct, or reform and for reconsideration of the trial court's order granting Cincinnati's motion for summary judgment.

Cincinnati moved for attorney's fees and costs under UDJA section 37.009. *See id.* § 37.009. Cincinnati requested $59,522.92 in attorney's fees, and it attached an affidavit from its attorney, invoices for legal fees, and a Rule 11 agreement. Farmers filed a response disputing Cincinnati's entitlement to fees and costs, and Cincinnati filed a reply.

The trial court entered a final judgment. The judgment denied Farmers' motion for summary judgment, motion for reconsideration, plea to the jurisdiction, and combined motion to modify, correct, or reform or for reconsideration. The

8

judgment granted Cincinnati's motion for summary judgment and awarded Cincinnati $57,922.92 in attorney's fees and costs. Finally, the judgment declared that: (1) the Farmers policy "is applicable and provides excess coverage for the loss giving rise to [the underlying lawsuit]"; and (2) the Farmers policy and the Cincinnati UL policy "will share coverage for the loss giving rise to the Underlying Lawsuit on a *pro rata* basis, paying in the proportion that each excess policy's per occurrence limits bears to the sum of those limits." This appeal followed.

## Subject-Matter Jurisdiction

In its second issue, Farmers contends that the trial court erred by granting Cincinnati's motion for summary judgment and denying Farmers' plea to the jurisdiction because the court lacked subject-matter jurisdiction over Cincinnati's claim for declaratory judgment.[3] Farmers further contends that the trial court erred by denying its motion for summary judgment because the trial court did have subject-matter jurisdiction over its counterclaim for declaratory judgment. Because this issue is jurisdictional and dispositive, we address it first.

---

[3] Also in its second issue, Farmers argues that a provision in its policy prohibited suit against it prior to a settlement or judgment in the underlying lawsuit. Based on our resolution of the jurisdictional part of the second issue, we do not reach this non-jurisdictional part of the issue.

9

## A.     Standard of Review

A party may challenge a trial court's subject-matter jurisdiction in various procedural vehicles, including a plea to the jurisdiction and a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Harris Cnty. v. Shook*, 634 S.W.3d 942, 948 (Tex. App.—Houston [1st Dist.] 2021, pet. denied).

A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a plea challenges only the pleadings, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To determine whether the plaintiff met this burden, we construe the pleadings liberally in favor of the plaintiff, taking all factual assertions as true and looking to the plaintiff's intent. *Id.*; *Gantt v. Harris Cnty.*, 674 S.W.3d 553, 559 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (quoting *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015) (per curiam)).

When a plea challenges the existence of jurisdictional facts with supporting evidence, the standard of review mirrors that of a traditional summary judgment: we review all the evidence in the light most favorable to the plaintiff to determine

10

whether a genuine issue of material fact exists regarding the jurisdictional issue. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 221, 227–28); *see also* TEX. R. CIV. P. 166a(c) (providing that summary judgment "shall be rendered" if evidence shows that no genuine issue of material fact exists and that movant is entitled to judgment as matter of law). The plea will be sustained only if there is no question of fact as to the jurisdictional issue. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). We may consider the parties' evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates the merits of a claim. *Clark*, 544 S.W.3d at 770–71.

**B.    Governing Law**

Subject-matter jurisdiction is essential to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject-matter jurisdiction is never presumed and cannot be waived. *Id.* The issue of ripeness "implicates subject matter jurisdiction" and "emphasizes the need for a concrete injury for a justiciable claim to be presented." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020) (quotation omitted). The ripeness doctrine arises from the prohibition on advisory opinions under the separation of powers doctrine. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010) (quotation omitted).

A case is ripe when "the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Lynch*, 595 S.W.3d at 683 (quotations and quotation marks omitted). If an alleged injury is based on hypothetical facts or events that have not yet come to pass, then the case is not ripe, and the court lacks subject-matter jurisdiction. *Id.*

Under the UDJA, a person interested under a written contract or whose "rights, status, or other legal relations are affected by" a contract may seek judicial resolution of questions of construction or validity arising under the contract and "obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § 37.004(a). The UDJA is a procedural device for deciding cases already within the jurisdiction of the trial court. *Id.* § 37.003(a). The UDJA does not independently grant subject-matter jurisdiction. *Holcomb v. Waller Cnty.*, 546 S.W.3d 833, 837 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *see Lynch*, 595 S.W.3d at 683. Declaratory judgment actions "are often brought with an eye to future harm," but "the often future-looking nature of UDJA suits does not remove the requirement that the court must have subject matter jurisdiction over the suit— that is, that the parties must have standing, and a ripe, justiciable controversy must exist." *Lynch*, 595 S.W.3d at 685.

**C.      Jurisdiction Over Cincinnati's Declaratory Judgment Claim**

Farmers argues that Cincinnati's claim for declaratory judgment was not ripe because no settlement or judgment had been entered against ACMI in the underlying lawsuit. Farmers characterizes Cincinnati's claim as seeking a declaration of Farmers' duty to indemnify ACMI under the Farmers policy, but Cincinnati disputes this characterization of its claim.

In its live petition, Cincinnati sought two declarations: (1) the Farmers policy provides excess coverage for the loss alleged in the underlying lawsuit; and (2) the Farmers policy and the Cincinnati UL policy "are co-excess to the Cincinnati CGL Policy and share on a *pro rata* basis with respect to the loss" arising in the underlying lawsuit. The final judgment issued two declarations similar to those requested by Cincinnati: (1) the Farmers policy "is applicable and provides excess coverage for the loss giving rise to [the underlying lawsuit]"; and (2) the Farmers policy and the Cincinnati UL policy "will share coverage for the loss giving rise to the Underlying Lawsuit on a *pro rata* basis, paying in the proportion that each excess policy's per occurrence limits bears to the sum of those limits."

As Farmers correctly argues, it is well-established under Texas law that a trial court generally lacks jurisdiction to declare an insurer's liability to indemnify its insured for damages that might be assessed against the insured in a separate pending lawsuit. *Firemen's Ins. Co. of Newark, N.J. v. Burch*, 442 S.W.2d 331, 332–33 (Tex.

1968) (holding that judgment declaring insurer's liability "upon any judgment which may hereafter be rendered in the [underlying] case of Burch v. Buttler is purely advisory in nature and beyond the power and jurisdiction of the district court to render"); *J.E.M. v. Fidelity & Cas. Co. of N.Y.*, 928 S.W.2d 668, 671–72 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see also Founders Com., Ltd. v. Trinity Universal Ins. Co.*, 176 S.W.3d 484, 492 (Tex. App.—Houston [1st Dist.] 2004, no pet.). This is because the duty to indemnify is determined by the proof presented at a trial on the insured's liability, not by the pleadings in an underlying liability lawsuit. *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) (quotation omitted); *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 n.41 (Tex. 2008) ("[T]he duty to indemnify is triggered not by the allegations in the pleadings but by whether a plaintiff ultimately prevails on a claim covered by the policy."). The Texas Supreme Court has carved out a limited exception to this general rule, holding that an insurer's duty to indemnify is justiciable before trial of an underlying liability lawsuit when the same reasons that negate the duty to defend also negate any possibility that the insurer will have a duty to indemnify for any judgment. *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *Founders Com.*, 176 S.W.3d at 492.

Cincinnati does not dispute that this well-established law generally applies to an insurer's duty to indemnify. Instead, Cincinnati argues that it did not seek a

14

declaration that Farmers had a duty to indemnify ACMI in the underlying lawsuit; rather, it sought a declaration concerning the interpretation of the Farmers policy and whether the Farmers policy and the Cincinnati UL policy provided co-excess coverage on a pro rata basis for the drowning death alleged in the underlying lawsuit.

An insurer's duty to indemnify requires the insurer "to pay all covered claims and judgments against an insured." *D.R. Horton-Tex.*, 300 S.W.3d at 743 (quotations omitted); *see also Indemnify*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "indemnify" as "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default" or "[t]o promise to reimburse (another) for such a loss"). Although Cincinnati's live petition did not use the term "indemnify," the petition did seek declarations that the Farmers policy provides coverage to ACMI in the underlying lawsuit and that the Farmers policy shares in coverage on a pro rata basis with the Cincinnati UL policy. Moreover, the trial court's judgment expressly declared that the Farmers policy and the Cincinnati UL policy shall "pay[] in the proportion that each excess policy's per occurrence limits bears to the sum of those limits." Thus, Cincinnati's petition essentially sought a declaration that Farmers had a duty to indemnify ACMI under the Farmers policy, and the trial court expressly concluded that Farmers did have such a duty. We disagree with Cincinnati that any meaningful distinction exists between the declaration of coverage it requested and a declaration of Farmers' duty to indemnify ACMI.

15

In arguing that its declaratory claim was ripe, Cincinnati cites two Texas Supreme Court opinions stating that insurers should make good-faith efforts to resolve coverage disputes prior to a determination of an insured's liability in a liability lawsuit. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996) ("Determining an insurer's obligations before its insured incurs liability benefits both the insurer and the insured by removing that uncertainty."); *see also Tex. Ass'n of Cntys. Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 135 (Tex. 2000) (stating that if insurer cannot obtain insured's consent to reasonable settlement offer, insurer may, among other options, seek prompt resolution of coverage dispute in declaratory judgment action).

Neither of these cases, however, addressed the issue presented here: whether a declaratory judgment action between co-insurers is justiciable prior to a settlement or judgment against the mutual insured in a liability lawsuit. In *Gandy*, the insured had already entered into a settlement agreement concerning liability before suit was filed against the insurer. 925 S.W.2d at 697–98. In *Texas Association of Counties*, after stating that an insured pursued prompt resolution of a coverage dispute in a declaratory judgment action, the court cited its prior holding in *Griffin* that an insurer's duty to indemnify is justiciable before the insured's liability is decided in an underlying suit when the insurer has no duty to defend and the same reasons that negate the duty to defend also negate any possibility that the insurer will ever have

16

a duty to indemnify. 52 S.W.3d at 135 (citing *Griffin*, 955 S.W.2d at 84). Thus, while we agree that it is good policy for an insurer to resolve coverage disputes promptly, the insurer must nevertheless present a ripe, justiciable claim before seeking judicial resolution of the dispute. Neither *Gandy* nor *Texas Association of Counties* supports Cincinnati's argument that its claim was ripe.

Cincinnati also relies on two federal court opinions to support its argument. In *RSUI Indemnity Co. v. Enbridge (U.S.) Inc.*, the Southern District of Texas stated that "a dispute regarding an insurer's duty to defend or indemnify its insured for losses in a state court tort action by a third party presents an actual controversy with[in] the meaning of the federal Declaratory Judgment Act, even if the tort action has not proceeded to judgment." No. H-08-1807, 2008 WL 5158179, at *2 (S.D. Tex. Dec. 9, 2008) (mem. and order). This statement runs contrary to Texas cases holding that declaratory judgment actions under Texas's UDJA concerning an insurer's pre-liability duty to indemnify are not justiciable. *See Griffin*, 955 S.W.2d at 84; *Founders Com.*, 176 S.W.3d at 492. Decisions of federal courts, particularly on matters of state law, are not binding on state courts. *Kinney v. Barnes*, 443 S.W.3d 87, 92 (Tex. 2014) (stating that, in interpreting state constitutional provisions, state courts "should borrow from well-reasoned and persuasive federal procedural and substantive precedent when this is deemed helpful, but should never feel compelled to parrot the federal judiciary") (quoting *Davenport v. Garcia*, 834 S.W.2d 4, 20

17

(Tex. 1992)); *In re Devon Energy Corp.*, 332 S.W.3d 543, 548 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) ("Although decisions of the federal courts of appeals do not bind Texas courts, we receive them with respectful consideration.") (quotations and quotation marks omitted).

Cincinnati also relies on *Employers Insurance of Wausau v. Burlington Northern and Santa Fe Railway Co. See* 336 F. Supp. 2d 637 (E.D. Tex. 2003). There, an insurer filed a suit for declaratory judgment to determine whether it owed its insured a duty to defend and a duty to indemnify in pending litigation against the insured. *Id.* at 639. The insurer argued, however, that it sought only an interpretation of the insurance policy, and it denied seeking a ruling that it had no duty to indemnify the insured. *Id.* at 640. The court interpreted Texas cases, including this Court's opinion in *J.E.M.*, as distinguishing between an insurer's duty to *indemnify* and an insurer's duty to *pay*. *Id.* at 641 (quoting *J.E.M.*, 928 S.W.2d at 671–72). The court interpreted the insurer's declaratory judgment claim as seeking "an interpretation of policy terms regarding aggregate limits and the law concerning stacking" rather than the insurer's duty to pay its insured. *Id.* Because the insurer did not seek a determination of its duty to pay and the judgment did not state that the insurer will have to pay, the court ultimately concluded that it did not need to address the insurer's duty to indemnify, and therefore the declaratory judgment action was justiciable. *Id.*

18

As discussed above, we find no meaningful distinction in the coverage declaration sought by Cincinnati and Farmers' duty to indemnify ACMI in the underlying lawsuit. *Employers Insurance of Wausau* relied on this Court's decision in *J.E.M.* to conclude that a distinction exists between an insurer's duty to indemnify and its duty to pay. *See id.* (citing *J.E.M.*, 928 S.W.2d at 671–72). In *J.E.M.*, however, this Court stated:

> [T]he plaintiffs argue that the issue of whether Fidelity owed a duty to indemnify the defendant was premature, thus not a justiciable issue. We agree. The trial court has no jurisdiction to declare the insurer's liability to indemnify its insured for damages that might be assessed against the insured in a pending lawsuit. Any determination of an insurer's duty to pay would be hypothetical before judgment is granted against the insured, and the court's opinion would be purely advisory.

928 S.W.2d at 671–72 (citations omitted). *J.E.M.* held that because "the underlying tort suit had not yet reached a verdict at the time the summary judgment was entered," the issue of whether the insurer owed a duty of indemnification was not yet justiciable. *Id.* at 672. Thus, we disagree with *Employers Insurance of Wausau* that *J.E.M.* distinguished between an insurer's duty to indemnify and its duty to pay. *See Kinney*, 443 S.W.3d at 92. To the contrary, *J.E.M.* indicates that the two duties are the same. 928 S.W.2d at 671–72.

Moreover, *Employers Insurance of Wausau* is distinguishable because Cincinnati sought a declaration that the Farmers policy would "share on a *pro rata* basis" in coverage with the Cincinnati UL policy. Furthermore, the judgment in this

19

case expressly ordered that Cincinnati—under its UL policy—and Farmers will share coverage on a pro rata basis "*paying* in the proportion that each excess policy's per occurrence limits bears to the sum of those limits." (Emphasis added.) Thus, the judgment ordered Farmers to pay at least a portion of any settlement or judgment ultimately entered against ACMI in the underlying lawsuit. Under the reasoning of *Employers Insurance of Wausau*, such a dispute is not justiciable until ACMI's liability is determined in the underlying lawsuit.

We conclude that Cincinnati's claim for declaratory judgment is not ripe before a settlement or judgment is issued against ACMI in the underlying litigation.[4] We therefore hold that the trial court erred by denying Farmers' plea to the jurisdiction and motion for summary judgment and granting Cincinnati's motion for summary judgment because the court lacked subject-matter jurisdiction over Cincinnati's claim.

We sustain in part Farmers' second issue.

---

[4] Based on our conclusion that Cincinnati's claim for declaratory judgment is not ripe, we also conclude that the trial court lacked subject-matter jurisdiction to award Cincinnati attorney's fees and costs under the UDJA. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). We sustain in part Farmers' third issue challenging the trial court's award of attorney's fees and costs to Cincinnati.

20

**D. Jurisdiction Over Farmers' Declaratory Judgment Counterclaim**

Also in its second issue, Farmers contends that even though the trial court lacked jurisdiction to declare that Farmers had a duty to indemnify ACMI, the trial court did have jurisdiction to declare that Farmers did *not* have a duty to indemnify ACMI. Farmers argues that the pleadings in the underlying lawsuit against ACMI negate any possibility that Farmers will have to indemnify ACMI because (1) the drowning death occurred on premises not insured by the Farmers policy; and (2) the Farmers policy covered only accounting operations at ACMI's business office in Cypress.

In its live counterpetition, Farmers alleged that the trial court had jurisdiction to declare that it has no duty to indemnify ACMI because the pleadings in the underlying lawsuit include no alleged circumstance where coverage would apply. Farmers sought summary judgment on this ground. Farmers' live counterclaim did not allege that Farmers has no duty to defend ACMI.

As stated above, a trial court generally lacks jurisdiction to declare an insurer's duty to indemnify prior to a judicial determination of the insured's liability. *Burch*, 442 S.W.2d at 332–33; *J.E.M.*, 928 S.W.2d at 671–72. However, an exception to this general rule exists when the same reasons that negate the duty to defend also negate any possibility that the insurer will have a duty to indemnify.

*Griffin*, 955 S.W.2d at 84; *Founders Com.*, 176 S.W.3d at 492. Farmers relies on this exception to contend that its counterclaim is justiciable.

Both *Griffin* and *Founders Commercial* involved challenges to an insurer's duties both to defend and to indemnify its insured. *See Griffin*, 955 S.W.2d at 81–82; *Founders Com.*, 176 S.W.3d at 486, 492. Thus, both duties were raised by the pleadings in those cases, and the Texas Supreme Court and this Court were able to determine whether the duty to indemnify applied based on whether the corresponding duty to defend applied. Here, by contrast, neither party's claims raised the issue of whether Farmers had a duty to defend ACMI in the underlying lawsuit. Any decision by this Court concerning Farmers' duty to defend ACMI would result in an impermissible advisory opinion. We therefore conclude that neither *Griffin* nor *Founders Commercial* supports Farmers' contention that it presented a justiciable, ripe controversy in its declaratory judgment counterclaim.

We conclude that Farmers has not established that its declaratory judgment counterclaim presents a ripe, justiciable controversy.[5] We therefore hold that the trial court did not err by denying Farmers' motion for summary judgment because the

---

[5]   Based on this conclusion, we further conclude that the trial court did not err by denying Farmers' request for attorney's fees and costs. *See id.* We overrule in part Farmers' third issue challenging the trial court's denial of Farmers' request for attorney's fees and costs.

22

court lacked subject-matter jurisdiction over Farmers' counterclaim. We overrule in part Farmers' second issue.[6]

## Conclusion

We reverse the trial court's judgment and render judgment dismissing the case for lack of subject-matter jurisdiction.

April L. Farris
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

---

[6] Because we conclude that the trial court lacked subject-matter jurisdiction over both Cincinnati's claim and Farmers' counterclaim, we need not consider Farmers' first issue concerning the merits of the claim and counterclaim. *See* TEX. R. APP. P. 47.1.